WACHOVIA BANK & TRUST COMPANY, N.A. v. CHARLIE SMITH, JR. AND WIFE, BETTY W. SMITH v. TOM TUNSTALL, TRADING AND DOING BUSINESS AS TOM'S MOBILE HOME SALES

No. 793SC145

(Filed 5 February 1980)

1. **Fraud § 12— defects in mobile home—actual knowledge of seller—insufficiency of evidence of fraud**

In an action to recover for fraud in the sale of a mobile home, evidence was insufficient to be submitted to the jury where it tended to show that third party defendant did not represent to defendants anything other than the fact that the mobile home was just like a new trailer except that it had been set up and dismantled but had never been lived in; there was no evidence justifying an inference that third party defendant participated in the transaction with bad faith or otherwise with an intent fraudulently to induce defendants to purchase; there was no evidence that third party defendant knew of any problems with the mobile home other than those concerning installation; and there was no evidence tending to show that any representations were made in order to induce defendants to purchase the mobile home.

**2. Unfair Competition § 1— defects in mobile home—no unfair or deceptive trade practices**

Where there was no evidence of willful deception or bad faith, the existence of defects in a mobile home sold by third party defendant to defendants and third party defendant's failure to perform stated services with respect to the mobile home did not constitute unfair and deceptive trade practices in violation of G.S. 75-1.1 since, even if such facts did constitute a breach of warranty, a breach alone does not constitute a violation of G.S. 75-1.1.

**3. Rules of Civil Procedure § 42— third party action—separate trials—no error**

In an action by plaintiff to recover the amount owed on a note, which defendants executed for the purchase of a mobile home, where defendants brought a third party action against the seller of the mobile home for fraud and unfair and deceptive trade practices, defendants were not prejudiced by the trial court's granting of plaintiff's motion for separate trials, since the court provided for a consolidated trial with plaintiff and third party defendant as defendants on the issues of breach of implied and express warranties, and since the issues of fraud and unfair and deceptive trade practices primarily related to the conduct of third party defendant and did not involve plaintiff.

ON writ of certiorari to review an order entered by *Tillery, Judge.* Order entered 6 April 1978 in Superior Court, CRAVEN County. Heard in the Court of Appeals 16 October 1979.

On 25 October 1973, Charlie Smith, Jr., and his wife, Betty W. Smith, defendants and third party plaintiffs (hereinafter referred to as Smiths), purchased a 1972 Signet double wide mobile home from Tom Tunstall of Tom's Mobile Home Sales (Tunstall), third party defendant. The Smiths' purchase was financed by Wachovia Bank and Trust Company (Wachovia), with the first payment due on 10 December 1973. Thereafter, on 12 November 1973, Wachovia sent the Smiths a payment book, simultaneously advising them pursuant to G.S. 25A-25(b) (subsequently amended as of 30 June 1978) that any defenses which they might have against Tunstall would be waived unless Wachovia be notified within 30 days. Mrs. Smith wrote a letter to Wachovia on 13 November 1973, informing Wachovia of several defects found in the mobile home. A similar letter was sent 30 November 1973 to Tunstall, which concerned some of the defects listed in the previous letter to Wachovia. On 4 December 1973, the Smiths advised Wachovia and Tunstall that they revoked acceptance of the mobile home. Although a letter dated 5 December 1973 from Wachovia to the Smiths stated that Tunstall had assured Wachovia that adjustments had been made to the trailer, another

letter of rejection was sent to Wachovia on 6 December 1973. On 28 December 1973, the Smiths wrote Tunstall and demanded the return of their down payment and other expenses. The Smiths thereafter, on 7 January 1974, informed Tunstall that the mobile home would be sold on 14 March 1974 at private sale pursuant to G.S. 25-2-711(3).

On 1 February 1974, Wachovia instituted this action to recover the full amount owing on the note of $21,020.02. Ancillary to its action, Wachovia sought claim and delivery of the mobile home. Upon hearing on the issue of claim and delivery, an order of seizure was issued on 28 February 1974. Such order was subsequently affirmed by the Superior Court of Craven County, and the Smiths' appeal to this Court was dismissed on 4 December 1974. The Smiths' petition for a writ of certiorari was denied by the Supreme Court on 4 February 1975.

The Smiths thereafter filed an answer and counterclaim, joining Tunstall as a third party defendant and seeking damages against Wachovia and Tunstall, jointly and severally, on grounds of fraud, unfair and deceptive trade practices, breach of implied warranty, and breach of express warranty. Third party defendant Tunstall answered the third party complaint. Wachovia filed no reply to defendants' counterclaim.

On 15 January 1977, separate trials were ordered, with the claim of the Smiths against Tunstall to be tried prior to the claim against Wachovia.

Trial was held of the Smiths' action against Tunstall at the 24 April 1978 Civil Session of Superior Court in Craven County. At the close of all the evidence, Tunstall's motions for directed verdict were allowed as to the issues of fraud and unfair or deceptive trade practices. The trial court further ruled that the issues of breach of express warranty and breach of implied warranty concerned Wachovia as well as Tunstall and, therefore, ruled that another trial be conducted on those issues with Wachovia and Tunstall as defendants. The trial court concluded that "[t]hese matters are reserved without prejudice to any rights of any party to this action." The Smiths appeal from the trial court's ruling.

*Davis, Hassell & Hudson, by Charles R. Hassell, Jr., and Brock, Foy & Proctor, by Louis F. Foy, Jr., and Jimmie C. Proctor, for defendant appellants.*

*Dunn and Dunn, by Raymond E. Dunn, for third party defendant appellee.*

CLARK, Judge.

A threshold consideration in this appeal is whether the trial court erred in granting Tunstall's motions for directed verdict on the issues of fraud and unfair or deceptive trade practices. It is the well-established rule that in determining the sufficiency of evidence to withstand a defendant's motion for directed verdict under G.S. 1A-1, Rule 50, all the evidence which supports the plaintiff's claim must be taken as true and considered in the light most favorable to him, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and resolving contradictions, conflicts and inconsistencies in his favor. *Maness v. Fowler-Jones Construction Co.,* 10 N.C. App. 592, 179 S.E. 2d 816, *cert. denied,* 278 N.C. 522, 180 S.E. 2d 610 (1971). A directed verdict may be granted only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. *Dickinson v. Pake,* 284 N.C. 576, 201 S.E. 2d 897 (1974). We will consider the issues of fraud and unfair or deceptive trade practices separately.

[1] We find the evidence presented insufficient to support a verdict on the issue of fraud and, therefore, the issue of fraud was properly withheld from the jury. In *Ragsdale v. Kennedy,* 286 N.C. 130, 209 S.E. 2d 494 (1974), our Supreme Court stated the essential elements of actionable fraud: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." (Citations omitted.) 286 N.C. at 138, 209 S.E. 2d at 500; *Rosenthal v. Perkins,* 42 N.C. App. 449, 257 S.E. 2d 63 (1979); *Stone v. Paradise Park Homes, Inc.,* 37 N.C. App. 97, 245 S.E. 2d 801, *cert. denied,* 295 N.C. 653, 248 S.E. 2d 257 (1978). From the evidence presented, we find nothing tending to show that Tunstall represented to the Smiths anything other than the fact that the mobile home was "just like a new trailer, except that it had been set up and dismantled and had never been lived in." Further, we find the

evidence insufficient to justify an inference that Tunstall participated in the transaction with bad faith or otherwise with an intent fraudulently to induce the Smiths to purchase the mobile home. Mrs. Smith testified that at the time she agreed to purchase the trailer, she looked in every room and after looking, decided she wanted it. It is clear that at that time, the parties understood that the trailer would have to be installed and adjusted, and Tunstall agreed to perform the installation. With respect to the alleged defects in the trailer, assuming that such defects did exist, there is no evidence indicating that Tunstall knew of any problems with the mobile home other than the problems concerning the installation of the trailer at the time it was sold. Knowledge on the part of the promisor is an essential element of fraud. *Tarlton v. Keith*, 250 N.C. 298, 108 S.E. 2d 621 (1959). And, although actual knowledge of the falsity of the representation is not required when such representations are made with reckless indifference as to their truthfulness and with an intent that the other party should rely upon them, *Zager v. Setzer*, 242 N.C. 493, 88 S.E. 2d 94 (1955), such is not the case here. Moreover, there was no evidence tending to show that any representations were made in order to induce defendants to purchase the mobile home. *See Rosenthal v. Perkins, supra.* The sale of the mobile home was an arm's length transaction, and although problems concerning the mobile home subsequently developed, this fact alone is insufficient to justify a jury verdict on the issue of actionable fraud. *See Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975); *Stone v. Paradise Park Homes, Inc., supra.*

The Smiths next argue that it was error to grant Tunstall's motion for directed verdict on the issue of unfair or deceptive trade practices. G.S. 75-1.1 provides generally that unfair methods of competition and unfair or deceptive trade practices are unlawful. By its enactment of Chapter 75, the General Assembly meant to provide a civil legal means to maintain ethical standards of dealings between persons in businesses and the consuming public. *State ex rel. Edmisten v. J. C. Penney Co.*, 30 N.C. App. 368, 227 S.E. 2d 141 (1976), *rev'd on other grounds*, 292 N.C. 311, 233 S.E. 2d 895 (1977). Whether an act or practice is unfair or deceptive within the meaning of G.S. 75-1.1 is a question of law for the court to determine. *CF Industries, Inc. v. Transcontinental Gas Pipe Line Corp.*, 448 F. Supp. 475 (W.D.N.C. 1978); *Hardy v.*

*Toler, supra; Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *cert. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978).

At the outset we note that Chapter 747 of the 1977 Session Laws, which rewrote Subsections (a) and (b) of G.S. 75-1.1, is not applicable to the present case. This action was pending when the 1977 act was adopted, and Section 5 of that act provides that it shall not apply to pending litigation. Therefore, we refer to G.S. 75-1.1 as it existed prior to the 1977 amendment and as it was originally adopted in 1969. At that time, G.S. 75-1.1(a) and (b) read:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

> (b) The purpose of this section is to declare, and to provide civil means to maintain, ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

Chapter 75 does not define "unfair or deceptive acts or practices," nor is any precise definition of the term possible. In *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 248 S.E. 2d 739 (1978), *cert. denied*, 296 N.C. 411, 251 S.E. 2d 469 (1979), this Court, in dealing with the term "unfair methods of competition" under G.S. 75-1.1(a) as it existed before the 1977 amendment, stated:

> Unfair competition has been referred to in terms of conduct "which a court of equity would consider unfair." *Extract Co. v. Ray*, 221 N.C. 269, 273, 20 S.E. 2d 59, 61 (1942). Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.

38 N.C. App. at 400, 248 S.E. 2d at 744. Applying G.S. 75-1.1, the *Harrington* Court concluded that whether a particular advertisement exceeds the bounds of fairness must be determined by viewing it against the background of all of the relevant facts of that

case, one of which concerns the market which the advertisement is designed to influence. Thus, in the case before us, whether Tunstall's conduct concerning the sale of the mobile home to the Smiths was unfair or deceptive must be determined in light of the circumstances surrounding the transaction.

In *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975), our Supreme Court held as a matter of law that certain false representations made by defendants to plaintiff constituted unfair or deceptive acts or practices in violation of Chapter 75-1.1. In that case, defendants represented that the automobile it sold to plaintiff was a one-owner car, had been driven only 23,000 miles, had never been wrecked, and that the warranty could be transferred to plaintiff. After plaintiff purchased the vehicle upon those representations, it was discovered that the car was a second-owner vehicle, had been wrecked, had been driven 80,000 miles when plaintiff bought it, and the warranty could not be transferred. It was established that defendants had actual knowledge of the condition of the automobile at the time it was sold.

[2]    We need not decide now what specific actions, if any, which do not constitute fraud, would nonetheless be a violation of G.S. 75-1.1. Nevertheless, under the evidence presented in this case, absent evidence of willful deception or bad faith, we cannot conclude that the existence of defects in the mobile home or Tunstall's failure to perform the above stated services constitutes a violaton of G.S. 75-1.1 to warrant the award of treble damages under G.S. 75-16. Assuming *arguendo* that such facts, if established, constitute a breach of warranty, a breach alone does not constitute a violation of Chapter 75, and it is, therefore, inappropriate to treble damages resulting solely from the breach. *Stone v. Paradise Park Homes, Inc., supra.*

[3]    The Smiths next assign as error the trial court's granting Wachovia's motion for separate trials under Rule 20(b) and Rule 42(b) of the North Carolina Rules of Civil Procedure. In their counterclaim and third party complaint, the Smiths allege a joint business venture and agency relationship between Wachovia and Tunstall, and contend that Wachovia and Tunstall are jointly and severally liable for damages allegedly suffered by them. The trial court concluded that "a separate trial will be in furtherance of convenience and will avoid prejudice against the plaintiff . . . ."

G.S. 1A-1, Rule 20(a), permissive joinder, provides that "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all parties will arise in the action." Alternative claims are most often joined where there is uncertainty as to which of several parties is entitled to recover or is liable. 1 T. Wilson and J. Wilson, McIntosh N.C. Practice and Procedure § 661 (2nd ed. 1956). *See, e.g., Woods v. Smith,* 297 N.C. 363, 255 S.E. 2d 174 (1979); *Aetna Insurance Co. v. Carroll's Transfer, Inc.,* 14 N.C. App. 481, 188 S.E. 2d 612 (1972).

Although the basic philosophy of the party joinder provisions is to allow relatively unrestricted initial joinder, G.S. 1A-1, Rule 20(b) and G.S. 1A-1, Rule 42(b) provide that the trial judge has discretionary authority to sever and order separate trials. Under Rule 42(b), "[t]he court may in furtherance of convenience or to avoid prejudice . . . order a separate trial of any claim, crossclaim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, crossclaims, counterclaims, third-party claims, or issues." G.S. 1A-1, Rule 42(b). "Whether or not (sic) there should be severance rests in the sound discretion of the trial judge." *Aetna Insurance Co. v. Carroll's Transfer, Inc., supra,* 14 N.C. App. at 484, 188 S.E. 2d at 614.

In the present action, regardless of whether the trial court properly ordered separate trials, we find no evidence in the record of any prejudice to the Smiths. By providing for a consolidated trial with Wachovia and Tunstall as defendants on the issues of breach of implied warranty and breach of express warranty, the trial court's order cured any prejudice that might have resulted from severance. In addition, severance on the issues of fraud and unfair or deceptive trade practices was similarly not prejudicial, in that those issues primarily related to the conduct of Tunstall and did not involve Wachovia except as holder of the note evidencing the Smiths' purchase of the mobile home.

By so holding, we reject the Smiths' contention that the trial court misinterpreted the order for severance by failing to submit the issues concerning breach of warranty to the jury. The trial court's order specifically preserved all issues except that of fraud

and unfair or deceptive trade practices for later consideration. We view this procedure as appropriate under the particular circumstances of this case.

The Smiths' next assignment of error concerns the trial court's failure to submit the issue of wrongful claim and delivery to the jury. In *Wachovia Bank & Trust Co. v. Smith,* 24 N.C. App. 133, 210 S.E. 2d 212 (1974), *cert. denied,* 286 N.C. 420, 211 S.E. 2d 801 (1975), this Court held that the issues surrounding the Smiths' alleged security interest in and priority to the mobile home, in opposition to Wachovia's claim and delivery motion, should be decided when the case was heard on its merits, stating that "[n]o substantial right of the defendants has yet been judicially determined." 24 N.C. App. at 135, 210 S.E. 2d at 213. This matter is to be decided under the applicable provisions in the Uniform Commercial Code. In its judgment, the trial court preserved these issues for resolution by a jury subsequently empaneled. Defendants have suffered no prejudice by the order. This assignment of error is overruled.

The last assignment of error is directed to the exclusion of evidence as to the price paid by Tunstall for the mobile home. We fail to see the relevance of that evidence on any issue as between the Smiths and Tunstall. It was properly excluded. The judgment of the trial court is

Affirmed.

Judges PARKER and MARTIN (Robert M.) concur.